IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01584-PAB-TPO

P.C.,

    Plaintiff,

v.

D FORT HOTEL, LLC.,

    Defendant.

## ORDER

The matters before the Court are the Motion to Dismiss [Docket No. 11], filed by defendant D Fort Hotel, LLC., and Plaintiff's Motion to Proceed Under Pseudonym for Pretrial Proceedings [Docket No. 22]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### I. BACKGROUND[1]

#### A. Factual Background

Defendant D Fort Hotel, LLC. ("D Fort"), is the owner and operator of a hotel known as Motel 6 Fort Collins (the "Motel 6") located in Fort Collins, Colorado. Docket No. 1 at 1, ¶ 2. Plaintiff P.C.[2] was sex trafficked at the Motel 6 in 2022. *Id.* at 2, ¶ 9. P.C.'s sex trafficker deliberately and repeatedly selected the subject hotel as a venue

---

[1] The facts below are taken from plaintiff's complaint, Docket No. 1, and are presumed to be true, unless otherwise noted, for purposes of ruling on the motion to dismiss.

[2] For the reasons discussed below, the Court will grant plaintiff's request to proceed using her initials and will refer to her as P.C.

for sex trafficking in 2022, and sex trafficking had occurred at the Motel 6 prior to 2022. *Id.* at 2, 4, ¶¶ 10, 18.  While P.C. was being trafficked at the Motel 6, her trafficker had direct interaction with hotel staff by paying staff members to act as lookouts and to inform her trafficker of police activity.  *Id.* at 6–7, ¶ 37.  D Fort's staff witnessed frequent signs of sex trafficking, including: (a) constant foot traffic of sex buyers to the rooms rented by the trafficker to have sex with victims; (b) trafficked victims, who were bruised, malnourished, drug and alcohol-impaired, sleep-impaired, hygiene-impaired, and behavior-impaired, walking around the hotel in sexually explicit clothing; (c) suspicious individuals loitering outside the hotel rooms when a sex buyer would enter a room; (d) suspicious items that were observed by housekeeping staff inside the hotel rooms rented by the trafficker, including weapons, cash, drugs, drug paraphernalia, condoms, and lubricants; (e) traffickers monitoring hotel hallways and doors or walking the hotel's perimeter; and (f) P.C. soliciting for sex buyer business in common areas.  *Id*. at 7–8, ¶¶ 45–46.  During 2022, P.C. interacted with hotel staff on a daily basis, and staff witnessed and observed P.C., her trafficker, and a steady procession of sex buyers going in and out of the rooms rented to the trafficker.  *Id*. at 8, ¶ 48.

The Motel 6 could deny accommodation to a guest or eject a guest for (1) being visibly under the influence of drugs or alcohol; (2) creating a nuisance to the public; (3) using a hotel room for unlawful purposes; (4) using hotel amenities and premises for unlawful acts; (5) bringing in unregistered guests; (6) disturbing other guests; and (7) violating other rules set by the hotel.  *Id.* at 9, ¶ 50.

D Fort was on notice of the high likelihood of illegal sex trafficking occurring at the Motel 6 through the passage of the Trafficking Victims Protections Reauthorization

2

Act ("TVPRA") in 2008 and numerous other legislative initiatives. *Id.* at 3, ¶ 12. As a hotel operator, D Fort controlled the training, policies, and decisions on the implementation and execution of anti-trafficking policies, protocols, rules, and guidelines for the Motel 6. *Id.* at 2–3, ¶ 11. D Fort failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the Motel 6. *Id.* at 3, ¶ 14.

### B. Procedural Background

On June 6, 2024, plaintiff filed her complaint, identifying herself only by the initials P.C. *Id.* at 1. P.C. brings two claims against D Fort, namely, one claim of violating the TVPRA, 18 U.S.C § 1595(a), for knowingly benefitting from participation in a venture which D Fort knew or should have known was engaged in sex trafficking, and one claim of negligence. *Id.* at 5–17, ¶¶ 25–86. On August 8, 2024, D Fort filed its motion to dismiss, arguing that P.C. has failed to plausibly allege her federal TVPRA claim and that the Court should therefore dismiss both claims because the Court lacks jurisdiction over her state law negligence claim. Docket No. 11 at 1–2. P.C. responded, Docket No. 12, and D Fort replied. Docket No. 13.

On September 14, 2024, the Court ordered plaintiff to file a motion to proceed under her initials, as opposed to her true name, noting that, "[a]lthough the complaint incorporates a rationale for the plaintiff to be able to identify herself solely by her initials, the proper procedure is, upon filing the complaint, to contemporaneously file a motion to proceed by use of initials." Docket No. 18. P.C. filed the motion to proceed under her initials on September 18, 2024. Docket No. 22. D Fort did not respond.

3

II.   **LEGAL STANDARD**

   A.  <u>**Motion to Dismiss**</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).

4

Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B. The Trafficking Victims Protection Reauthorization Act

Congress enacted the Trafficking Victims Protection Act in 2000, creating criminal offenses for forced labor and sex trafficking. Pub. L. No. 106-386, 114 Stat. 1464 (2000). The original act did not contain a private right of action. *Griffin v. Alamo*, 2016 WL 7391046, at *2 (W.D. Ark. Dec. 21, 2016). However, in 2003, Congress added a right of action for victims to sue their traffickers civilly. Pub. L. No. 108-193, 117 Stat. 2875 (2003). In 2008, Congress further amended the law to permit victims to sue those who facilitate trafficking ventures. The 2008 law provides

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added).

To state a claim under a § 1595(a) beneficiary theory, a plaintiff must allege facts from which it can be reasonably inferred that a defendant (1) "knowingly benefit[ted] financially or by receiving anything of value" (2) from participation in a venture that defendant "knew or should have known has engaged in" sex trafficking. 18 U.S.C. § 1595(a); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020). Sex trafficking includes the use "of force, threats of force, fraud, coercion . . . , or any combination of such means" "to cause [a] person to engage in a commercial sex act."

5

18 U.S.C. § 1591(a).  The act defines "coercion" as "threats of serious harm to or physical restraint against any person" or "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person."  *Id.*, § 1591(e)(2)(A)–(B).

A plaintiff may satisfy these elements in one of two ways.  She may show that the defendant's own acts, omissions, and state of mind establish each element.  Alternatively, she may impute to the defendant the acts, omissions, and state of mind of an agent of the defendant.  The former is referred to as "direct liability" and the latter as "indirect liability."  *See, e.g.*, *A.B. v. Hilton Worldwide Holdings, Inc.*, 2020 WL 5371459, at *6 (D. Ore. Sept. 8, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020).

### C. Motion to Proceed Under Initials

"Proceeding under pseudonym in federal court is, by all accounts, an unusual procedure."  *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (quotation omitted).  "Moreover, there does not appear to be any specific statute or rule supporting the practice. . . .  To the contrary, the Federal Rules of Civil Procedure mandate that all pleadings contain the name of the parties, *see* Fed. R. Civ. P. 10(a), and Rule 17(a) specifically states that '[e]very action shall be prosecuted in the name of the real party in interest.'"  *Id.* (quoting Fed. R. Civ. P. 17(a)).  However, the Tenth Circuit has recognized three "exceptional" circumstances permitting a party to proceed under a pseudonym: (1) "cases involving matters of a highly sensitive and personal nature," (2) cases involving a "real danger of physical harm," and (3) "where the injury litigated

6

against would be incurred as a result of the disclosure of the plaintiff's identity."[3]  *Id.* (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)).

"The public has a common law right to access judicial records and documents in civil cases, but the right is not absolute."  *Doe v. FBI*, 218 F.R.D. 256, 258 (D. Colo. 2003).  "[I]t is proper to weigh the public interest in determining whether some form of anonymity is warranted."  *Femedeer*, 227 at 1246.  "Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials."  *Id.*  "The risk that a plaintiff may suffer some embarrassment is not enough" to permit the plaintiff to proceed anonymously.  *Id.*

### III. ANALYSIS

#### A. Motion to Proceed Under Initials

P.C. seeks leave to identify herself using only her initials during the pretrial proceedings in this case.  Docket No. 22 at 1.  She argues that the highly personal and intimate nature of the allegations in the complaint weighs in favor of permitting her to use her initials.  *Id.* at 3.  Moreover, P.C. asserts that allowing this degree of anonymity in a case involving allegations of sex trafficking serves the public interest because failing to do so would chill other victims of sex trafficking from litigating their claims.  *Id.* at 5.

Courts have found that cases involving claims of sex trafficking warrant allowing plaintiffs to proceed under their initials because plaintiffs litigating such claims "will be called upon to disclose alleged experiences which are sensitive, highly personal in

---

[3] These exceptional circumstances apply equally in considering whether a plaintiff may proceed under her initials rather than under a pseudonym.  *See, e.g., S.Y. v. Choice Hotels Int'l, Inc.*, 2021 WL 4167677, at *1 (M.D. Fla. Sept. 14, 2021) (permitting plaintiffs to proceed using initials S.Y. and C.S.).

nature, and involve the utmost intimacy." *S.Y.*, 2021 WL 4167677, at *2; *see also A.B. v. Shilo Inn, Salem, LLC*, 2023 WL 5237714, at *3 (D. Or. Aug. 15, 2023) ("Because this Court finds the need for anonymity outweighs any prejudice to the Defendants and the public, this Court grants leave for Plaintiff to proceed under the pseudonym 'A.B.' in this case."); *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *1 (N.D. Cal. May 19, 2023); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020); *J.M. v. Choice Hotels Int'l, Inc.*, 2022 WL 10626493, at *3 (E.D. Cal. Oct. 18, 2022).

The Court finds that requiring plaintiff to proceed under her full name would result in more than "[t]he risk that a plaintiff may suffer some embarrassment," *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 411 (10th Cir. 2005) (unpublished), and that the scope of her claims raises more than economic or professional concerns. *Nat'l Commodity and Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (leave to proceed under a pseudonym will not be granted "when only the plaintiff's economic or professional concerns are involved"). Rather, the Court agrees with the reasoning of other courts that plaintiffs' sex trafficking claims are of a "highly sensitive and personal nature." *Femedeer*, 227 at 1246. Here, P.C. alleges that she was repeatedly victimized and trafficked for sex, that she was psychologically and physically prohibited from escaping, and that the trauma of her being trafficked has led to depression, anxiety disorders, and PTSD. Docket No. 1 at 2–4, 9, ¶¶ 6, 17, 51. The public interest in access to judicial records is outweighed by P.C.'s privacy interests in this case, and the Court will grant plaintiff's motion to use her initials in the pretrial phase of this case.

B. **Motion to Dismiss**

D Fort argues that P.C. has failed to adequately plead a TVPRA violation because, while the allegations in the complaint may plausibly allege that D Fort was

8

aware that commercial sex occurred at the Motel 6, there are no allegations that show D Fort knew that P.C.'s participation was not voluntary, i.e. that she was being trafficked. Docket No. 11 at 4–5, ¶ 4.  D Fort states that, "[a]lthough Plaintiff alleged indicia of commercial sex activity, when the victim is an adult, § 1591 only provides a remedy for commercial sex activity involving 'force, threats of force, fraud, [or] coercion'" and that "[i]t is the force or coercion element that is absent from the Complaint." *Id.* (quoting 18 U.S.C. § 1591(a)).  It contends that "[t]he Complaint did not allege that any of D Fort's personnel witnessed non-consensual sex activity (or, indeed, any sex activity at all) or witnessed Plaintiff being threatened or assaulted by her alleged trafficker," and that such allegations are necessary to support her TVPRA claim.  *Id.*

P.C. responds that the allegations in the complaint, taken as true, show that D Fort should have known that sex trafficking was taking place at the Motel 6.[4]  Docket No. 12 at 11.  She claims that the allegations contain sufficient red flags that are alleged to have been seen by hotel staff to put them on notice of the non-consensual nature of the sex work, including (1) weapons, drugs, and lubricants in rooms rented by her trafficker; (2) P.C.'s signs of abuse, such as bruises and her malnourished state; and (3) the "constant foot traffic of sex buyers to the trafficker rented rooms to have sex with trafficked victims."  *Id.* at 12 (quoting Docket No. 1 at 7–8, ¶ 45).  She asserts that courts have found similar allegations regarding signs of violence and abuse sufficient to

---

[4] Plaintiff's response also argues that she has plausibly alleged that (1) she is a victim of sex trafficking, (2) D Fort participated in the sex trafficking venture, and (3) D Fort knowingly benefited from its participation in the venture.  Docket No. 12 at 4–10.  Because D Fort challenges only the sufficiency of the complaint as to whether D Fort knew that the commercial sex allegedly occurring at the Motel 6 was not voluntary, it is unnecessary to consider P.C.'s arguments on these other issues.

9

plausibly allege that defendants should have known that they were participating in a venture that violated the TVPRA. *Id.* at 13 (citing *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1238 (N.D. Ga. 2022); *Doe 4 v. Red Roof Inns, Inc.*, 2021 WL 12104819, at *7 (N.D. Ga. Feb. 3, 2021)).

D Fort is correct that many of the allegations in P.C.'s complaint support only the proposition that P.C. and her trafficker were engaged in commercial sex work, but not that P.C. was being trafficked. For example, while P.C.'s allegations that hotel staff observed "weapons, cash, drugs, drug paraphernalia, condoms, [and] lubricants" or that they observed P.C. in sexually explicit clothing "soliciting for sex buyer business in common areas" is indicative of commercial sex work, as well as other illegal activity, these allegations do not support the inference that P.C. was engaging in this activity due to force, threats of force, fraud, or coercion. Docket No. 1 at 7–8, ¶ 45. Moreover, while courts have relied on allegations similar to those in P.C.'s complaint to find that the plaintiff had plausibly alleged a TVPRA claim, these courts have also relied on allegations that provide more direct evidence of force and coercion. *See, e.g.*, *J.G.*, 619 F. Supp. 3d at 1238–39 (finding that defendant should have known about sex trafficking based on plaintiff's allegations that she had visible signs of physical injuries and poor hygiene, that plaintiff's traffickers carried weapons and operated openly, and that hotel staff saw condoms, drugs, weapons, and many towels, sheets, and tissues in plaintiff's room, but also relying on the fact that plaintiff looked underage and was wearing inappropriate clothing); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (finding that defendant should have known about sex trafficking based on allegations that plaintiff's hotel room contained excessive used condoms and traffickers

made excessive requests for towels and linens in the rooms, but also relying on pleas and screams for help coming for victim's rooms); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 967 (S.D. Ohio 2019) (finding that defendant should have known about sex trafficking based on allegations that hotel staff saw trash cans containing an extraordinary number of used condoms, but also that hotel staff ignored plaintiff's pleas for help).

The Court, however, finds that three of plaintiffs' allegations support an inference that D Fort staff should have known that P.C. was being trafficked, namely, P.C.'s allegations that (1) bruised, malnourished, drug and alcohol-impaired, sleep-impaired, and hygiene-impaired trafficking victims would walk around hotel grounds, (2) that D Fort staff witnessed P.C., her trafficker, and a steady procession of sex buyers going in and out of a single room on a daily basis, and (3) that P.C.'s trafficker had direct interaction with hotel employees by paying them to serve as lookouts/informants. Docket No. 1 at 7–8, 14, ¶¶ 45,48, 72.

Courts have found that allegations of injuries, such as bruises, support an inference that hotel staff should have known that the commercial sex activity was also part of a human trafficking operation.  *See*, *e.g.*, *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 178 (E.D. Pa. 2020) ("A.B. alleges Marriott knew or should have known about A.B.'s trafficking" in part because of "prominent bruising and injury on her body."); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) (relying on the allegations that defendants ignored "obvious signs of human trafficking (bruises and physical deterioration) and indicators of commercial sex activity (bottles of lubricants, boxes of condoms, excessive requests for towels and linens, cash

11

payments)"); *M.A.*, 425 F. Supp. 3d at 962, 968 ("She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation," such as that "the hotel staff would have or should have observed visible physical changes, such as bruising. . . . These allegations are sufficient to survive a 12(b)(6) motion to dismiss."); *J.G.*, 619 F. Supp. 3d at 1236.

Courts have also found that allegations of voluminous sex buyers are indicative of the fact that the commercial sex activity was coerced. *See, e.g., A.G.*, 2022 WL 1644921, at *4 (finding that "the amount of men visiting [plaintiff's] room, [and] the disturbances caused by the men visiting Plaintiff's room" demonstrate that defendant had constructive knowledge that plaintiff was being sex trafficked); *S.Y.*, 476 F. Supp. 3d at 1257 (finding plaintiff had plausibly alleged a TVPRA violation, in part, because she alleged there were "[m]ultiple men per day coming and going from the same rooms without luggage or personal possessions"); *A.B.*, 455 F. Supp. 3d at 193 (finding plaintiff had plausibly alleged a TVPRA violation, in part, because she alleged that "as many as six men an evening entered each of the three hotels as an 'unannounced guest,' creating a 'voluminous and obvious' constant stream of male visitors to A.B.'s rooms accessed through the front door and main lobby of the hotels"); *Doe S.W.*, 2020 WL 1244192, at *5 (finding plaintiff had plausibly alleged a TVPRA violation, in part, because she alleged that, "[o]n average, three to five Johns would enter and leave the hotel guest room on a daily basis"); *Doe 4*, 2021 WL 12104819, at *7 ("Further, CC&S, Kuzzins, and Essex knew or should have known the venture violated the TVPRA because their employees, agents, and representatives saw the signs of sex trafficking exhibited by Plaintiff, the condition of the rooms in which she was trafficked, the

12

frequency and volume of traffic of male buyers to Plaintiff's rooms, and the numerous other victims being trafficked at the hotel which evidenced sex trafficking, as opposed to mere prostitution.").

Although P.C.'s complaint lacks important details such as where and how large her bruises were, how many men visited the rooms of trafficking victims on a regular basis, and who at the hotel served as lookouts, the Court finds that her complaint presents sufficient factual allegations to nudge her claim from possible to plausible. *Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [her] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  The Court therefore denies D Fort's motion to dismiss.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that the Motion to Dismiss [Docket No. 11] is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion to Proceed Under Pseudonym for Pretrial Proceedings [Docket No. 22] is **GRANTED**.

DATED February 5, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge